# United States Court of Appeals

### For the Eighth Circuit

_____

No. 24-3494

_____

Sheila Murphy; Ben Murphy

*Plaintiffs - Appellees*

v.

Continental Resources, Inc.

*Defendant - Appellant*

_____

No. 24-3502

_____

Keith Rychner; Omer Rychner; Roselyn Rychner

*Plaintiffs - Appellees*

v.

Continental Resources, Inc.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of North Dakota - Western

_____

Submitted: December 18, 2025
Filed: July 8, 2026

_____

Before LOKEN, LAVENSKI R. SMITH, and KOBES, Circuit Judges.
_____

LAVENSKI R. SMITH, Circuit Judge.

Sheila Murphy and Ben Murphy (the Murphys) sued Continental Resources, Inc. (Continental), alleging violations of North Dakota law related to Continental's drilling and oil production operations on the Murphys' land. Represented by the same legal counsel as the Murphys, Keith Rychner, Omer Rychner, and Roselyn Rychner (the Rychners) brought a similar lawsuit against Continental for its operations on the Rychners' land. The Murphys and the Rychners (collectively, Appellees) both settled their lawsuits against Continental, and the district court[1] awarded attorneys' fees to Appellees pursuant to N.D.C.C. § 28-26-06. In these consolidated appeals, Continental argues that the district court erred by awarding unreasonable attorneys' fees and not allowing the parties to present oral arguments on the issue. Finding no error, we affirm.

I. *Background*

Appellees are surface landowners in North Dakota.[2] Continental is a commercial oil and gas producer. Continental owns the rights to drill and produce oil and gas from the mineral estates underlying some or all of Appellees' land.

North Dakota Century Code Chapter 38-11.1, also known as the Oil and Gas Production Damage Compensation Act, creates a process to compensate surface landowners like Appellees whose land is subject to mineral development. Relevant here, the Act requires mineral developers like Continental to compensate surface

_____

[1]The Honorable Daniel M. Traynor, United States District Judge for the District of North Dakota.

[2]Sheila Murphy leases her land to her son, Ben Murphy, who manages their ranch.

owners "for lost land value, lost use of and access to the surface owner's land, and lost value of improvements caused by drilling operations." N.D.C.C. § 38-11.1-04.

In compliance with N.D.C.C. § 38-11.1-04, Continental provided Appellees with written notice of the drilling operations it planned on their land. Continental eventually commenced its operations on Appellees' land, as permitted by the statute.[3] The parties entered compensation negotiations, but these failed. Appellees sued Continental.

This long-lived litigation began when the Murphys filed their lawsuit in federal district court. They were represented by the Braaten Law Firm and sought compensation for damages pursuant to N.D.C.C. §§ 38-11.1 and 32-03-30 and alleged violations of North Dakota trespass and nuisance laws. Similarly, the Rychners, also represented by the Braaten Law Firm, filed their lawsuit in federal district court two days later. The Rychner suit, however, only sought compensation pursuant to N.D.C.C. § 38-11.1. Both cases were assigned to the district court that sometimes held joint hearings for the cases. The parties engaged in extensive litigation, including disputes related to discovery; expert witness disclosures, particularly which party had to disclose first; scheduling; dispositive motions; and attorneys' fees.

Early on, the parties unsuccessfully attempted to resolve the cases through mediation. Following mediation, Continental filed offers of judgments in both cases. Continental offered $160,000 to resolve the Murphys' claims and $140,000 to resolve the Rychners'. These offers would exclude the recovery of attorneys' fees. Appellees rejected Continental's offers, and litigation continued. Eventually, in 2023, the parties agreed to stipulated judgments. The Murphys agreed to resolve their claims for $76,541, and the Rychners agreed to resolve theirs for $110,000.

---

[3]Continental notified the Murphys and commenced drilling operations on their land at a different time than it notified the Rychners and commenced drilling operations on their land. The differences in those dates are irrelevant for purposes of these consolidated appeals.

Following the stipulated judgments, Appellees moved for attorneys' fees and expenses pursuant to N.D.C.C. § 38-11.1-09. This statute entitled Appellees to reasonable attorneys' fees, costs, and disbursements. In their motions, Appellees acknowledged that "both parties were in the 'weeds' on issues." R. Doc. 128, at 4.[4] Accordingly, Appellees did not request the full amount expended on fees. Instead, they requested a discounted amount to recognize the difference between the "fees reasonably incurred and those that another party is reasonably required to reimburse." *Id.* at 5. Appellees also explained that their requested fee awards included discounts resulting from an agreed upon reduced billing rate for paralegals. Moreover, Appellees explained that they did not request any fees that they incurred after August 2023, despite the litigation continuing into December 2023. In support of their fee requests, Appellees produced attorneys' fees invoices. Ultimately, the Murphys requested an award of $415,346.10 and the Rychners requested $360,714.33.

In its response, Continental argued that Appellees' "extraordinary" fee requests were unreasonable considering the "straightforward" nature of the dispute. R. Doc. 140, at 2. Specifically, Continental raised eight objectionable features of the fee requests. These objections included (1) Appellees' counsel's excessive redactions on billing entries, excess block billing on research billing entries, and excessive time spent on research in an uncomplicated case; (2) Appellees' counsel's discovery practices, including their pursuit of discovery that Continental contended was unnecessary and irrelevant; (3) the size of the fee request in relation to the fee that landowners recovered in *Continental Resources, Inc. v. Fisher*, 102 F.4th 918 (8th Cir. 2024), an Oil and Gas Production Damage Compensation Act case where we affirmed an attorneys' fee award of $249,243.60; (4) Appellees' "lack of success," R. Doc. 140, at 21; (5) the amount of attorneys' fees Appellees that

---

[4]Citations to "R. Doc." refer to the docket for the Murphys' case, number 1:19-cv-00069. In this opinion, every citation to a quotation from a document in the Murphys' case can also be found in the corresponding document in the Rychners' case. For example, this quote can be found in the Murphys' memorandum in support of their motion for attorneys' fees, as well as the Rychners'.

incurred compared to Continental; (6) Appellees' delays in obtaining an appraisal; (7) Appellees' counsel's simultaneous representation of the Murphys and the Rychners in similar cases, including Continental's belief that Appellees' counsel did not take advantage of economies of scale like Continental's counsel did; and (8) Appellees' failure to segregate claims that allowed for the recovery of attorneys' fees from claims that Continental contended did not permit recovery.

In a separate motion, Continental requested an in-person oral argument on Appellees' motion for attorneys' fees. Continental believed that an "in-person oral argument" would benefit the district court and the parties "[g]iven the amount of fees sought, the length of the litigation, the volume of evidence presented, the number of time entries involved, and the issues which Continental raised with respect to [Appellees'] request for fees." R. Doc. 143, at 1–2.

Applying North Dakota law, the district court awarded $424,046.11 in attorneys' fees to the Murphys and $369,003.90 to the Rychners.[5] In determining its award, the district court applied the lodestar method. Under the lodestar method, courts determine reasonable attorneys' fees based on "the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," minus any deductions for inadequate documentation or hours that were not "reasonably expended." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). The district court found Appellees' counsel's hourly rate of $225 to $350 reasonable. Thus, the district court concluded that it would examine Appellees' actual attorneys' fees incurred—$515,346.10 for the Murphys and $460,714.33 for the Rychners—instead of the discounted amounts that they requested.

Next, the district court considered the eight *Big Pines* factors to determine if any deductions were necessary. *See Big Pines, LLC v. Baker*, 958 N.W.2d 480, 486 (N.D. 2021) (listing the "[o]ther important factors [North Dakota courts] consider

---

[5]The district court also awarded costs to Appellees, but Continental does not appeal those awards.

when determining reasonable attorney's fees").[6] It concluded that the *Big Pines* factors weighed in favor of full fee awards.

Finally, the district court considered additional factors such as the magistrate judge's rulings that each party would bear their own costs associated with the motions to compel; Appellees' counsel's "questionable" approach to proving damages, R. Doc. 149, at 11; and Appellees' counsel's "poor documentation" regarding the fees, *id.* at 12, all of which led the district court to reduce Appellees' fee awards. Thus, although the Murphys incurred $515,346.10 in attorneys' fees, the district court deducted $91,299.99 for a total fee award of $424.046.11. Similarly, the district court deducted $91,710.43 from the $460,714.33 in attorneys' fees that the Rychners' incurred, for a total award of $369,003.90. The district court also denied Continental's motion for an oral argument.

Continental appeals the district court's judgment.

## II. *Discussion*

On appeal, Continental argues that the district court erred by awarding unreasonable attorneys' fees to Appellees. Continental also argues that the district court erred when it denied Continental's request for oral argument. We disagree on both arguments and affirm.

### A. *Reasonableness of the Fee Awards*

"We review de novo the legal issues related to an award of attorneys' fees, while the actual award is reviewed for an abuse of discretion." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). "The district court abuses its discretion when it fails to consider a relevant factor that should have been given significant weight, considers an irrelevant or improper factor and gives it significant

---

[6]We agree with Appellees that *Big Pines* is neither the seminal nor most recent case discussing the eight factors listed in North Dakota Rule of Professional Conduct 1.5(a). Nonetheless, we will refer to them as the *Big Pines* factors as the district court did for consistency.

-6-

weight, or considers all the proper factors but commits a clear error of judgment in weighing those factors." *Am. Civ. Liberties Union of Minn. v. Tarek ibn Ziyad Acad.*, 643 F.3d 1088, 1093 (8th Cir. 2011). Additionally, "the district court abuses its discretion if it makes a legal error." *Id.*

> We are especially reluctant to substitute our judgment for that of the district court in the matter of appropriate attorney's fees, because the district court is in the best position to determine whether hours were reasonably expended and whether an attorney's hourly rates are reasonable within the context of the relevant community.

*Arnold v. ADT Sec. Servs, Inc.*, 627 F.3d 716, 720 (8th Cir. 2010) (quoting *Collins v. Burg*, 169 F.3d 563, 565 (8th Cir. 1999)).

Continental does not argue that the district court made any legal errors that are subject to de novo review. Instead, Continental contends that the district court abused its discretion in determining the actual awards by (1) awarding more in attorneys' fees than Appellees requested, (2) failing to give significant weight to several of the *Big Pines* factors, (3) acting unreasonably and arbitrarily toward Continental, (4) awarding fees despite the fact that Appellees' billing records did not permit meaningful review of the requested fees, and (5) granting fee awards that were significantly higher than the fee award in *Fisher*. We will address the arguments seriatim.

### 1. *Awarding More than the Requested Amount*

First, Continental argues that the district court erred when it awarded more in attorneys' fees than Appellees requested. Essentially, it contends that the fee awards Appellees sought—$415,346.10 for the Murphys and $360,714.33 for the Rychners—should act as caps on the fee awards that they can recover. Continental asserts that the deductions that the district court deemed necessary should have been subtracted from the requested amounts, not the amounts that Appellees actually incurred.

In support of its argument, Continental cites several cases holding that upward adjustments of attorneys' fee awards occur only in very rare circumstances. *See Rode v. Dellarciprete*, 892 F.2d 1177, 1184 (3d Cir. 1990) ("To date, the Supreme Court has restricted the court's discretion to adjust the lodestar upward."); *Leroy v. City of Houston*, 831 F.2d 576, 583 (5th Cir. 1987) ("[I]n the absence of further legislative guidance . . . multipliers or other enhancement of a reasonable lodestar fee to compensate for assuming the risk of loss is impermissible under the usual fee-shifting statutes." (quoting *Pennsylvania v. Del. Valley Citizens' Council for Clean Air*, 483 U.S. 711, 727 (1987)); *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553–560 (2010) (reversing a fee award that included an enhancement to the lodestar amount); *Beazer v. New York City Transit Auth.*, 558 F.2d 97, 99–101 (2d Cir. 1977) (reversing a fee award that included a "premium" above the hours worked and the costs incurred), *rev'd on other grounds*, 440 U.S. 568 (1979). However, Appellees' cases differ from those cited cases. In *Rode*, *Leroy*, and *Beazer*, the Third, Fifth, and Second Circuits concluded that a fee award including a multiplier or premium above the lodestar amount was improper, and in *Perdue*, the Supreme Court concluded the same. *See Rode*, 892 F.2d at 1185; *Leroy*, 831 F.2d at 584; *Beazer*, 558 F.2d at 100–01; *Perdue*, 559 U.S. at 557. Here, unlike those cases, the district court did not include any upward adjustment to the lodestar amount. In fact, the district court only made deductions to the fee amounts that Appellees actually incurred.

Continental's contention that the district court should have taken its deductions from the discounted amounts that Appellees requested is without merit. As explained above, the lodestar amount consists of two parts: the "reasonable hourly rate" and "the number of hours reasonably expended on the litigation." *Hensley*, 461 U.S. at 433. "The district court is given great latitude to determine a reasonable hourly rate because it 'is "intimately familiar" with its local bar.'" *Banks v. Slay*, 875 F.3d 876, 882 (8th Cir. 2017) (quoting *Emery v. Hunt*, 272 F.3d 1042, 1048 (8th Cir. 2001)). To calculate the number of hours reasonably expended, the district court "may rely on reconstructed time entries . . . if those entries satisfactorily document the time," but "should exclude hours that were not reasonably expended from its calculations." *Childress v. Fox. Assocs., LLC*, 932 F.3d 1165, 1172 (8th Cir.

2019) (citation modified). District courts may also reduce the lodestar amount after considering other factors such as the *Big Pines* factors discussed below. *See Hensley*, 461 U.S. at 434 n.9 ("The district court also may consider other factors . . . though it should note that many of these factors usually are subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."). District courts are afforded considerable discretion when calculating the lodestar amount. *See Denesha v. Farmers Ins. Exch.*, 161 F.3d 491, 501 (8th Cir. 1998) ("Due to its unique understanding of and exposure to proceedings before it, the district court retains discretion in determining attorneys fees."). Accordingly, a district court's calculation of the reasonable hours expended or a reasonable rate does not require it to accept either party's suggestions, but the court may base its calculation on the full record before it.

Thus, the district court did not err when it chose to start its analyses with the attorneys' fees actually incurred, instead of the discounted amounts requested by Appellees.

### 2. Big Pines *Factors*

Second, Continental argues that the district court erred by failing to give significant weight to several of the *Big Pines* factors. The North Dakota Supreme Court has explained that the lodestar amount may be varied after considering the following factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Big Pines, LLC*, 958 N.W.2d at 486 (quoting N.D.R. Prof. Conduct 1.5(a)).

The district court expressly considered the first, second, fourth, and seventh *Big Pines* factors. It concluded that the first factor weighs in favor of full fee awards because "both parties got lost in the weeds on some of the issues," "[a] significant amount of time was expended on both sides" due to "both sides['] obstinance on certain issues," and the case "require[d] a certain level of skill that is possessed by [Appellees'] counsel." R. Doc. 149, at 9.

Continental argues that the district court abused its discretion by failing to analyze the "incredible" and "extraordinary" hours that Appellees' counsel spent litigating these cases. Appellant's Br. 18.[7] We disagree. The district court did not abuse its discretion in weighing the first factor in favor of full awards. Continental bases its argument to the contrary on its assertion that Appellees' counsel made many unreasonable litigation decisions related to its research, discovery, and expert witnesses. However, as we explained above, "the district court is in the best position to determine whether hours were reasonably expended." *Arnold*, 627 F.3d at 720 (quoting *Collins v. Burg*, 169 F.3d 563, 565 (8th Cir. 1999)). Indeed, "[t]he court was painfully familiar with the entire course of proceedings involved with this action and was in the best position to exercise its discretion in awarding attorney's fees." *Gissel v. Kenmare Tp.*, 512 N.W.2d 470, 478 (N.D. 1994). The record does not support the conclusion that the district court committed a clear error of judgment when it explained that *both* parties got lost in the weeds on some issues, and that

---

[7]These quotes appear on page 18 of Continental's brief in both appeals.

*both* parties were being obstinate, and that ultimately *both* parties were to blame. Thus, we will take the district court at its word.

The district court also determined that the second factor weighed in favor of full fee awards. It concluded that Appellees' cases, both spanning several years and requiring hundreds of hours of work by multiple attorneys and staff at the Braaten Law Firm, resulted in the loss of other potential employment by the Braaten Law Firm. The district court also determined that this fact was apparent to Appellees. Continental argues that the district court erred because it assumed facts that were not in evidence.

Continental's argument fails. On this record, the district court could reasonably conclude that multi-year litigation requiring hundreds of hours of legal work precluded the Braaten Law Firm from at least some other representational opportunities. Also, Appellees' receipt of monthly invoices from the Braaten Law Firm made it apparent to them that the firm was dedicating substantial time to their cases, likely at the expense of working on other cases.

The district court weighed the fourth factor in Appellees' favor because they each obtained a favorable result. The district court did acknowledge that Appellees made "grossly excessive" expenditures but weighed the factor in Appellees' favor because the Oil and Gas Production Damage Compensation Act specifically intended to provide the maximum protection necessary for landowners from the undesirable effects of mineral development. R. Doc. 149, at 10. Continental argues that the district court abused its discretion when it considered the legislative intent and legislative history of the Act. It contends that this was not a case about legislative rights, but a case about money. Moreover, Continental argues that the district court erred in weighing this factor in Appellees' favor despite its comment that Appellees' fees were "grossly excessive."

The district court did not abuse its discretion in weighing the fourth factor in Appellees' favor. It is not unusual for courts to discuss legislative intent when

-11-

considering the "amount involved and the results obtained" factor. *See Tusa v. Omaha Auto Auction Inc.*, 712 F.2d 1248, 1255 (8th Cir. 1983) (discussing the legislative intent of the Disclosure Act when weighing the "amount involved and the results obtained" *Johnson*[8] factor); *Duval v. Midwest Auto City, Inc.*, 578 F.2d 721, 726 (8th Cir. 1978) (considering the legislative intent of the Motor Vehicle Information and Cost Savings Act when discussing the disparity between the damages recovered and the attorneys' fees awarded). As the Minnesota Supreme Court explained in *Milner v. Farmers Insurance Exchange*, "several federal circuits measure success not only by looking at the difference between the judgment recovered and the recovery sought, but also by looking at the significance of the legal issues on which the plaintiff prevailed and the public purpose served by the litigation." 748 N.W.2d 608, 623 (Minn. 2008). As for the district court's "grossly excessive" characterization, we construe that as a comment that the fees were excessive relative to the stipulated judgments, not in the absolute sense. But as explained, such a disparity is contemplated by the statute permitting the recovery of fees.

Finally, the district court expressly concluded that the seventh factor weighs in favor of full fee awards. It explained that the Braaten Law Firm brought "a wealth of experience that was undoubtedly invaluable during litigation." R. Doc. 149, at 11. Continental suggests that the district court should have weighed this factor in its favor. It maintains that counsel with a "wealth of experience" would not have needed so many hours to litigate these cases.

The district court did not abuse its discretion in weighing the seventh factor in Appellees' favor. As we explained above, the district court was "painfully familiar" with these cases, *Gissel*, 512 N.W.2d at 478, and was therefore in a good position to observe the "invaluable" experience that the Braaten Law Firm brought

---

[8]*Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds*, *Blanchard v. Bergeron*, 489 U.S. 87, 94 (1989).

to the litigation, R. Doc. 149, at 11. The district court did not commit a clear error of judgment when it weighed this factor in Appellees' favor.

The district court did not expressly consider the third (locality fees) or eighth (fixed or contingent) factors in the context of *Big Pines*. However, in discussing the lodestar amount, the district court concluded that it had "reviewed the hourly rate of [Appellees'] attorneys and [found] the range of $225 to $350 an hour is a reasonable hourly rate in this market." *Id.* at 9. We do not consider the absence of discussion of these factors, in the court's judgment, to require reversal. The district court's reasoning that the hourly rates were reasonable likely indicate these factors would have been weighed in favor of full awards.

The district court did not discuss the fifth or sixth factors because it found them irrelevant to the analyses. Continental does not take issue with the district court's failure to discuss these factors, nor could it. "The district court [is] not required to make findings on every factor to determine reasonableness so long as this Court is able to discern the basis for the award." *Big Pines, LLC*, 958 N.W.2d at 487.

Ultimately, the district court did not abuse its discretion in weighing the *Big Pines* factors. It considered all relevant factors, did not consider any irrelevant factors, did not commit a clear error of judgment in weighing the factors, and did not commit any legal errors. Moreover, although the district court concluded that the *Big Pines* factors weigh in Appellees' favor, it still found that a 10% reduction was warranted. Its reasons included poor documentation and Appellees' role in causing litigation delays. *Big Pines* factors and similar lists are not courts' exclusive means for determining a reasonable attorneys' fee award.

### 3. *Acting Unreasonably Toward Continental*

Third, Continental argues that the district court erred by treating it unfairly in unreasonably and arbitrarily determining the fee awards. It argues that the district

court acted in a manner suggesting an intent to punish Continental rather than an intent to properly analyze the evidence and determine reasonable fee awards.

Continental highlights the following statement in the district court's order: "While the [c]ourt agrees with [Appellees] that both parties got lost in the weeds on some of the issues, this is not uncommon when one faces off against businesses like Continental." R. Doc. 149, at 9. Continental asserts that despite the district court's statement that *both* parties got stuck in the weeds, it only identified case delays caused by *Appellees* but did not explain how Continental contributed to any such delays. Continental considers this a contradiction in the district court's order.

Viewing the record, we do not agree that the district court's statement evinced an intent to punish Continental, nor is it a contradictory statement. The order in question was a ruling on Appellees' motion for attorneys' fees, not Continental's. Thus, it is reasonable that the district court goes into greater detail explaining how Appellees incurred their fees, including any conduct that it engaged in that resulted in unreasonable fees. Obviously, an opposing party's conduct can also contribute to the accrual of attorneys' fees, so the district court appropriately mentioned Continental's role. The district court was not required to go into greater detail listing all of Continental's contributions to delays. *See Big Pines, LLC*, 958 N.W.2d at 487 ("[A] district court is not required to describe its calculations in detail when awarding attorney's fees so long as this Court can discern a basis for the award.").

Continental also argues that the district court acted unreasonably and arbitrarily against it by awarding fees that were over 2.5 times greater than Continental's. However, we have held that a court does not abuse its discretion by deciding not to compare a plaintiff's fees to a defendant's. *Burks v. Siemens Energy & Automation, Inc.*, 215 F.3d 880, 884 (8th Cir. 2000). While comparing the parties' fees may sometimes be probative on reasonableness, *see Heng v. Rotech Med. Corp.*, 720 N.W.2d 54, 65 (N.D. 2006), it is sometimes an "apples-to-oranges comparison" that requires additional analysis, *Burks*, 215 F.3d at 884. Comparing the fees incurred by Continental, a corporation with an in-house legal department, to those

incurred by Appellees who relied exclusively on retained counsel, is the type of apples-to-oranges comparison that makes a comparison of fees less helpful.[9]

Accordingly, the district court did not act unreasonably or arbitrarily toward Continental in making its fee awards.

### 4. *Adequacy of Billing Records*

Fourth, Continental argues that the district court erred by awarding fees despite Appellees' inadequate billing records. Continental contends that Appellees' billing records were vague, heavily redacted, and failed to segregate claims for recoverable fees from claims for unrecoverable fees, which prevented meaningful review. Further, Continental argues that the district court abused its discretion by failing to consider duplicative billing entries between the Murphys and Rychners' cases.

The district court did not abuse its discretion by awarding attorneys' fees despite Appellees' poor documentation. Indeed, the district court noted Appellees' poor documentation and reduced the fee by 10%, in part, because of it. We have affirmed 10% reductions for poor documentation. *See Jensen v. Clarke*, 94 F.3d 1191, 1203 (8th Cir. 1996). Furthermore, the district court was not required to make additional deductions for the Murphys' failure to segregate their fees between claims. Their Oil and Gas Production Damage Compensation Act, trespass, and nuisance claims "ha[ve] a 'common core of facts' and 'related legal theories' so that 'counsel's time [was] devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis.'" *Duchscherer v.*

---

[9]This case is unlike *Deadwood Canyon Ranch, LLP v. Fidelity Exploration & Production Co.*, where Deadwood Canyon requested over $1 million in attorneys' fees. No. 4:10-cv-081, 2014 WL 11531553 (D.N.D. June 26, 2014). There, not only did the district court find that Deadwood Canyon's fees were unreasonable as compared to the $285,611 incurred by Fidelity, it also found them unreasonable based on the hourly rate when compared to the ordinary market rate, duplication of work performed by its two law firms, and its limited success in the lawsuit.

*W.W. Wallwork, Inc.*, 534 N.W.2d 13, 19 (N.D. 1995) (second alternation in original) (quoting *Hensley*, 461 U.S. at 435). Moreover, the Murphys' were not required to segregate Ben Murphy's claim because the stipulated judgment purports to compensate Sheila Murphy and Ben Murphy for both of their claims, not just Sheila Murphy for her claims. *See* R. Doc. 132, at 1 ("[T]he Clerk of Court is directed to enter judgment in favor of plaintiffs Sheila Murphy and Ben Murphy . . . for an award of $76,541.00.").

Continental's argument that the district court failed to consider duplicative billing entries for the Murphys and the Rychners also fails to establish that the district court abused its discretion. Of course, some billing entries are identical—the Murphys and the Rychners, similarly situated parties, brought nearly identical lawsuits against the same company. Naturally, their counsel often had to perform identical work for both cases. For example, according to the billing entries, Appellees' counsel billed the Murphys and the Rychners each for 2.8 hours of work researching and drafting motions in support of simultaneous disclosure of expert witnesses. A total of 5.6 hours is not an unreasonable amount of time to conduct research for and to draft such a motion, and it makes sense to bill the Murphys and the Rychners equally for the work. Continental would have been assessed no less had counsel billed the Murphys for the cost to research and draft the motion and only billed the Rychners for the time it took to copy and paste the motion.

Accordingly, the district court did not err based on its treatment of Appellees' billing records.

### 5. *Consideration of* <u>Continental Resources, Inc. v. Fisher</u>

Lastly, Continental argues that the district court erred awarding attorneys' fees that were substantially higher than the fee awarded in *Fisher*. In that case, we affirmed a district court's attorneys' fee award of $249,234.60, concluding that the district court did not abuse its discretion. 102 F.4th at 932. Continental contends that the fee awards at issue here are unreasonable when compared to the fee award

-16-

affirmed in *Fisher* because Appellees' cases are less complex and did not involve a jury trial. We disagree.

Attorneys' fee awards in similar cases may be considered when determining a reasonable fee award. *See Hensley*, 461 U.S. at 430 n.3; *Lynch v. Sweeney*, 732 N.W.2d 377, 380 (N.D. 2007). Like other factors, such as those in *Big Pines*, the court need not discuss them all in its analysis. *See Big Pines, LLC*, 958 N.W.2d at 487. As explained above, a district court does not abuse its discretion simply by failing to explicitly discuss a relevant factor. *See id.* ("[A] district court is not required to describe its calculations in detail . . . ."); *see also Griffin v. Jim Jamison, Inc.*, 188 F.3d 996, 997 (8th Cir. 1999) ("Nor is it necessary for district courts to examine exhaustively and explicitly, in every case, all of the factors that are relevant to the amount of a fee award.").

The district court did not abuse its discretion by failing to give considerable weight to a comparison of the cases. On its face, *Fisher* is a similar case, but there are meaningful differences between *Fisher* and Appellees' cases. For example, *Fisher* was essentially a two-part litigation involving two separate cases. *See Fisher*, 102 F.4th at 922–23 (explaining that first, "[t]he Fishers sued Continental, contending that Continental had no right to drill the well," then "Continental sued the Fishers, seeking a declaratory judgment that the Fishers were not entitled to further compensation"). In the first case, the Fishers sued Continental for damages related to Continental's drilling operations on their land. *Fisher v. Cont'l Res., Inc.*, No. 1:13-cv-097, 2015 WL 11400124, at *2. (D.N.D. Oct. 8, 2015). Continental filed a counterclaim seeking a declaration that it was entitled to use as much of the surface of the property as was reasonably necessary. *Id.* After almost three years of litigation, the district court concluded that Continental had the right to drill and operate on the land but required it to compensate the Fishers for any damage to their pore space if Continental used the well and the Fishers could prove their damages. *Id.* at *6. The Fishers settled their claim for surface damages and left open the issue of damages related to pore space. *Fisher*, 102 F.4th at 922–23. Attorneys' fees were not sought nor awarded in that case.

In the second case, Continental sued the Fishers, seeking a declaratory judgment that the Fishers were not entitled to compensation for Continental's injection of saltwater into their pore space. *Id.* at 923. The Fishers counterclaimed, seeking a declaratory judgment and compensation for the use of their pore space. *Id.* After another four years of litigation, a jury returned a verdict for the Fishers. *Id.* The Fishers were awarded attorneys' fees in the second case, and we affirmed. To be sure, *Fisher* involved years of litigation covering multiple disputed issues. The parties, however, litigated those issues in two separate lawsuits. Indeed, rulings from the first case aided in the resolution of issues in the second. *See, e.g.*, *Cont'l Res., Inc. v. Fisher*, 1:18-cv-181, 2021 WL 665102, at *6 (D.N.D. Feb. 19, 2021) ("With that and the court's clear conclusion in *Fisher I* that Fishers own the pore space at issue, there is no need to address the particular arguments now made by Continental for why Fishers do not own it."). Unlike the Fishers, Appellees did not have the benefit of a preceding lawsuit where each party paid its own attorneys' fees.

Moreover, in *Fisher*, we deferred to the judgment of the district court, who was familiar with the entire course of proceedings. This deference included its determinations such as the percentage used to reduce the Fishers' fees should a reduction be deemed necessary. 102 F.4th at 932. We also concluded that although the district court's explanation for its award was "not at length," its explanation was adequate. *Id.* Here, applying the same abuse of discretion standard that we applied in *Fisher*, we conclude that the district court did not err in determining its attorneys' fee award.

Accordingly, we affirm the district court's attorneys' fee awards.

## B. *Entitlement to a Hearing*

Continental argues that the district court erred when it denied its motion for an oral argument on the issue of attorneys' fees. We have held that "[w]hen serious factual disputes surround an application for attorney's fees, a hearing is required." *Herrera v. Valentine*, 653 F.2d 1220, 1233 (8th Cir. 1981).

-18-

Continental's motion for an oral argument did not convince the district court that oral argument would was required. Continental's motion argued that the district court should permit oral argument because of "the amount of fees sought, the length of the litigation, the volume of evidence presented, the number of time entries involved, and the issues which Continental raised with respect to [Appellees'] request for fees." R. Doc. 143, at 1–2. None of these reasons require a district court to provide oral argument. *See United States v. Porchay*, 533 F.3d 704, 710 (8th Cir. 2008) ("Porchay does not cite any material factual disputes regarding her petition for fees; therefore, we conclude that the district court was not mandated to hold a hearing on this matter."). The district court was surely aware of the length of the litigation and was well capable of sorting through the voluminous evidence.

Moreover, the issues Continental raised in its response to Appellees' motion for attorneys' fees did not require a hearing to resolve. In *Herrara*, we concluded that the district court did not err in denying a hearing, despite potential factual disputes regarding whether the appellee's time billed was duplicative or her expenditures unnecessary. 653 F.2d at 1233; *see also Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1330 (D.C. Cir. 1982) ("Disputed issues of fact frequently can be adequately resolved by the documentation accompanying the fee application and through appropriate discovery lodged with the Court. When the District Court determines that the information generated by these procedures provides an adequate factual basis for an award it may in its discretion decline to hold a hearing.").

Here, the gravamen of Continental's argument is that the attorneys' fees that Appellees incurred were unreasonable based on their counsel's billing practices and case strategy. On this record, it was not error for the district court to decide that no oral argument was needed. While like in *Herrara*, there is a potential factual dispute regarding duplicative work done between the Murphys and Rychners' cases, that can be resolved by the court's review of the "several hundred pages of attorney invoices" submitted by Appellees and the "competing evidence" submitted by Continental. R. Doc. 143, at 1–2. "Our review of the record in this case persuades us that no useful

purpose would have been served by holding a hearing on the issue of attorneys' fees." *Hardman v. Bd. of Educ. of Dollarway, Ark. Sch. Dist.*, 714 F.2d 823, 825 (8th Cir. 1983).

Accordingly, we affirm the district court's denial of Continental's motion for an oral argument.

### III. *Conclusion*

For the foregoing reasons, we affirm the judgments of the district court.

KOBES, Circuit Judge, concurring in part and concurring in the judgment.

I agree with most of the court's opinion and concur in the judgment, but I respectfully part ways with the analysis in section II.A.1.

Under the lodestar method, courts multiply "a reasonable hourly rate" by "the number of hours reasonably expended on the litigation." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Unreasonable, excessive, or duplicative hours should be "exclude[d] from this initial fee calculation." *Id.* at 434. The district court may then vary its final award based on the *Big Pines* factors. *See id.*

Appellees conceded that not all their hours were reasonably expended, so the district court should have reduced the hours in its lodestar calculation. *Id.* at 433–34; *see also Vines v. Welspun Pipes Inc.*, 9 F.4th 849, 855 (8th Cir. 2021). Instead, the district court confirmed that the Appellees' billable rate was reasonable and then moved to its *Big Pines* analysis without calculating the number of hours reasonably worked. This was error. *Vines*, 9 F.4th at 856 ("Although the district court need not explicitly state which hours it finds reasonable, it must at least calculate the hourly rate and the reasonable number of hours worked."); *Duchscherer v. W.W. Wallwork, Inc.*, 534 N.W.2d 13, 20 (N.D. 1995) (holding that "the trial court misapplied the law by failing to initially calculate a lodestar figure based on the number of hours reasonably expended multiplied by a reasonable hourly rate"); *see also Cont'l Res.,*

*Inc. v. Fisher*, 102 F.4th 918, 929 (8th Cir. 2024) ("North Dakota law governs the award of attorneys' fees.").

Skipping a step in the lodestar calculation sometimes requires reversal, *see, e.g.*, *Vines.*, 9 F.4th at 855 (reversing a fee award where the district court "properly determined the prevailing hourly rate" but "did not determine the number of hours [counsel] reasonably worked"), but it does not here because "the court used the very calculation method Continental suggested," *Fisher*, 102 F.4th at 930 ("An erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." (citation omitted)). Continental told the district court that instead of looking through Appellees' entire record to reduce unreasonable hours it could make a 75% reduction across the board. R. Doc. 140, at 34. "The district court did exactly what Continental suggested, except it chose a different percentage," so there is no reversible error. *Fisher*, 102 F.4th at 930.

————————————————